## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PETER TRAPPEN, Derivatively on Behalf of Nominal Defendant PLUG POWER INC., | ) Case No. |
| | ) |
| Plaintiff, | ) **VERIFIED SHAREHOLDER** |
| | ) **DERIVATIVE COMPLAINT** |
| v. | ) |
| | ) |
| ANDREW MARSH, PAUL B. MIDDLETON, DAVID MINDNICH, MARTIN D. HULL, GEORGE C. MCNAMEE, GARY K. WILLIS, MAUREEN O. HELMER, GREGORY KENAUSIS, KYUNGYEOL SONG, and KAVITA MAHTANI, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| PLUG POWER INC., | ) |
| | ) |
| Nominal Defendant. | ) |

By and through his undersigned counsel, Plaintiff Peter Trappen ("Plaintiff") brings this shareholder derivative action on behalf of Nominal Defendant Plug Power Inc. ("Plug Power," "Plug," or the "Company") and against certain current and former officers and directors of the Company for: (i) violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder; (ii) breaches of fiduciary duties; (iii) unjust enrichment; and (iv) waste of corporate assets. Plaintiff makes these allegations upon personal knowledge as to those allegations concerning himself and, as to all other matters, upon the investigation of counsel, which includes without limitation: (a) review and analysis of public filings made by Plug Power and other related parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications

1

disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on Plug Power's website concerning the Company's public statements; (d) pleadings, papers, and any documents filed with, and publicly available from, the related consolidated securities fraud class action lawsuit captioned *Buttar v. Plug Power Inc., et al.*, Case No. 23-cv-00576 (D. Del.) (the "Related Securities Action"); and (e) review of other publicly-available information concerning Plug Power and the Defendants.

## NATURE OF THE ACTION

1.     Plaintiff brings this action derivatively for the benefit of Nominal Defendant Plug Power against certain of the Company's current executive officers and directors aiming to rectify the Defendants' violations of the Exchange Act and breaches of fiduciary duties for issuing false and misleading statements and/or omitting material information in the Company's public filings and proxy statements from approximately August 9, 2022 to the present (the "Relevant Period").[1]

2.     Plug is a hydrogen fuel cell company that develops power systems for use in electric vehicles, stationary power units, and other purposes.

3.     The Relevant Period begins on August 9, 2022, to coincide with the publication of Plug's financial results for the second quarter of 2022, when Defendants assured investors that the Company had a "Strong Business Outlook" and touted a $15 billion sales funnel. Defendants also emphasized that the Company's supply chain was strong—with the Company's Chief Executive Officer stating that he did "not foresee supply chain issues this year"—and that Plug's rapidly growing inventory was simply attributable to the substantial growth the Company would experience in the second half of 2022. Consistent with these representations, Defendants projected

---

[1] The materially misleading statements and/or omissions were issued in the Company's financial reports and other public filings and releases from approximately August 9, 2022 to March 1, 2023; however, the wrongs complained of herein continue through to the present as the Company's internal controls remain deficient.

that the Company would generate 2022 revenue between $900 million and $925 million, representing approximately 80% year-over-year growth.

4.      Just a few months later, on October 14, 2022, investors began to learn the truth about Plug's prospects when the Company warned that full-year revenue could be 5% to 10% lower than previously projected. Defendants attributed the revenue revision to "some larger projects potentially being completed in 2023 instead of 2022 due to timing and broader supply chain issues." On this news, the price of Plug common stock declined $1.20 per share, or more than 6%, from a close of $19.23 per share on October 13, 2022, to close at $18.03 per share on October 14, 2022.

5.      About three weeks later, on November 8, 2022, the Company reported its financial results for the third quarter of 2022, reporting a decrease in gross margins and a further increase in inventory levels. On this news, the price of Plug common stock declined $0.20 per share, or more than 1%, from a close of $14.81 per share on November 8, 2022, to close at $14.61 per share on November 9, 2022.

6.      On January 25, 2023, despite Defendants' previous assurances that revenue growth would be at least 60% on a year-over-year basis, Plug revealed that it now expected to generate year-over-year revenue growth of just 45% to 50% in 2022. Defendants explained that this disappointing result "had to do with the fact that the new products came out a little slower than we hoped," as Plug's "[m]anufacturing had a few more issues than we hoped" and "added . . . complexity to supply chain." Following this revelation, the price of Plug common stock declined $0.97 per share, or approximately 6%, from a close of $16.34 per share on January 25, 2023, to close at $15.37 per share on January 26, 2023.

7.      Then, after the market closed on March 1, 2023, the Company announced its

financial results for the fourth quarter and full year 2022, including full-year revenue growth of just 40% on a year-over-year basis—missing even the reduced guidance range provided just a few weeks prior. On this news, the price of Plug common stock declined $0.88 per share, or more than 6%, from a close of $14.21 per share on March 1, 2023, to close at $13.33 per share on March 2, 2023.

8.     Throughout the Relevant Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that the Company was unable to effectively manage its supply chain and product manufacturing, resulting in reduced revenues and margins, increased inventory levels, and several large deals being delayed until at least 2023, among other issues. As a result, Defendants' statements about the Company's business, operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Plug Power's securities, Plaintiff and the Company have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to the subject matter of this action pursuant to 28 U.S.C. § 1331 because the claims arise under and pursuant to §10(b) of the Exchange Act and Rule 10(b)-5 promulgated thereunder.

11.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a), as they relate to Plaintiff's claims under 15 U.S.C. §78n(a).

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), because a substantial

portion of the transactions and wrongs complained of herein have occurred in this District and defendants have received substantial compensation within this District by doing business here and engaging in numerous activities that had an effect in this jurisdiction.

## THE PARTIES

13.     Plaintiff has been a shareholder during the Relevant Period and has continuously held shares of Plug Power common stock to present.

14.     Nominal Defendant Plug Power is incorporated in Delaware and its current principal executive offices are located at 968 Albany Shaker Road, Latham, New York 12110. The Company's common stock trades on the NASDAQ under the symbol "PLUG."

15.     Defendant Andrew Marsh ("Marsh") is, and at all relevant times was, the Company's Chief Executive Officer ("CEO") and a member of the Board of Directors. For the fiscal year of 2022, Defendant Marsh received $766,555 in total compensation. Defendant Marsh is named as a defendant in the Related Securities Action.

16.     Defendant Paul B. Middleton ("Middleton") is, and at all relevant times was, the Company's Chief Financial Officer. For the fiscal year of 2022, Defendant Middleton received $416,555 in total compensation. Defendant Middleton is named as a defendant in the Related Securities Action.

17.     Defendant David Mindnich ("Mindnich") is, and at all relevant times was, the Company's Executive Vice President of Global Manufacturing. Defendant Mindnich is named as a defendant in the Related Securities Action.

18.     Defendant Martin D. Hull ("Hull") is, and at all relevant times was, the Company's Controller and Chief Accounting Officer.  Defendant Hull is named as a defendant in the Related Securities Action.

19.     Defendants Marsh, Middleton, Mindnich, and Hull are collectively referred to herein as the "Securities Action Defendants."

20.     Defendant George C. McNamee ("McNamee") has been a director of the Company since 1997. For the fiscal year of 2022, Defendant McNamee received $314,186 in total compensation.

21.     Defendant Gary K. Willis ("Willis") has been a director of the Company since 2003. For the fiscal year of 2022, Defendant Willis received $274,186 in total compensation.

22.     Defendant Maureen O. Helmer ("Helmer") has been a director of the Company since 2004. For the fiscal year of 2022, Defendant Helmer received $269,186 in total compensation.

23.     Defendant Gregory Kenausis ("Kenausis") has been a director of the Company since 2013. For the fiscal year of 2022, Defendant Kenausis received $260,616 in total compensation.

24.     Defendant Kyungyeol Song ("Song") has been a director of the Company since 2021.

25.     Defendant Kavita Mahtani ("Mahtani") has been a director of the Company since 2022. For the fiscal year of 2022, Defendant Mahtani received $237,758 in total compensation.

26.     Defendants Marsh, McNamee, Willis, Helmer, Kenausis, Song, and Mahtani are collectively referred to herein as the "Director Defendants."

27.     The Director Defendants, along with the Securities Action Defendants are referred to herein collectively as the "Individual Defendants."

28.     Defendant Plug Power, along with the Individual Defendants are referred to herein collectively as the "Defendants."

6

29.     Related Party Non-Defendant Patrick Joggerst ("Joggerst") has been a director of the Company since 2023. Joggerst is named solely for the purposes of demand futility.

30.     Related Party Non-Defendant Mark Bonney ("Bonney") has been a director of the Company since 2023. Bonney is named solely for the purposes of demand futility.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

31.     By reason of their positions as officers, directors, and/or fiduciaries of Plug Power, and because of their ability to control the business and corporate affairs of Plug Power, the Individual Defendants owed, and owe, the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were, and are, required to use their utmost ability to control and manage Plug Power in a fair, just, honest, and equitable manner. The Individual Defendants were, and are, required to act in furtherance of the best interests of Plug Power and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

32.     Each director and officer of the Company owes to Plug Power and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing.

33.     In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's financial and business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

## Duties of the Members of the Audit Committee

34.     Pursuant to the Audit Committee Charter[2] (as amended on November 1, 2022) of Plug Power, the purposes of the Audit Committee are to: (i) oversee the accounting and financial reporting processes of the Company, the audits, and the integrity of the Company's financial statements; (ii) take, or recommend that the Board take, appropriate action to oversee the qualifications, independence and performance of the Company's independent auditors engaged for the purpose of preparing or issuing an audit report or performing other audit, review or attest services for the Company (the "Independent Auditors"); (iii) oversee the performance of the Company's internal audit function; and (iv) prepare the report required by the rules of the SEC to be included in the Company's annual proxy statement.

35.     Specifically, the Audit Committee has the following duties, among others:

The Audit Committee shall review the overall audit plan with the Independent Auditors and the members of management who are responsible for preparing the Company's financial statements, including the Company's Chief Financial Officer and/or principal accounting officer or principal financial officer (the Chief Financial Officer and such other officer or officers are referred to herein collectively as the "Senior Accounting Executive").

The Audit Committee shall review and discuss with management (including the Company's Senior Accounting Executive) and with the Independent Auditors the Company's annual audited financial statements, including (a) all critical accounting policies and practices used or to be used by the Company, (b) the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations" prior to the filing of the Company's Annual Report on Form 10-K, and (c) any significant financial reporting issues that have arisen in connection with the preparation of such audited financial statements.

The Audit Committee must review:

(i)     any analyses prepared by management and/or the Independent Auditors setting forth significant financial reporting issues and judgments made in

---

[2] Available at https://s29.q4cdn.com/600973483/files/doc_downloads/gov-docs/2023/03/audit-committee-charter-approved-11-2022.pdf.

connection with the preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements. The Audit Committee may consider the ramifications of the use of such alternative disclosures and treatments on the financial statements, and the treatment preferred by the Independent Auditors. The Audit Committee may also consider other material written communications between the Independent Auditors and management, such as any management letter or schedule of unadjusted differences;

(ii)     major issues as to the adequacy of the Company's internal controls including any special audit steps adopted in light of material control deficiencies;

(iii)    major issues regarding accounting principles and procedures and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles; and

(iv)     the effects of regulatory and accounting initiatives, as well as off-balance sheet transactions and structures, on the financial statements of the Company.

*       *       *

If brought to the attention of the Audit Committee, the Audit Committee shall discuss with the CEO and CFO of the Company (1) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the Company's ability to record, process, summarize and report financial information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act, within the time periods specified in the SEC's rules and forms, and (2) any fraud involving management or other employees who have a significant role in the Company's internal control over financial reporting.

*       *       *

The Audit Committee shall discuss with management and the Independent Auditor, prior to the filing of the Company's Quarterly Reports on Form 10-Q, (1) the Company's quarterly financial statements and the Company's related disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," (2) any such issues as may be brought to the Audit Committee's attention by the Independent Auditors pursuant to Statement on Auditing Standards No. 100, and (3) any significant financial reporting issues that have arisen in connection with the preparation of such financial statements.

The Audit Committee shall discuss the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating

agencies, including, in general, the types of information to be disclosed and the types of presentations to be made (paying particular attention to the use of "pro forma" or "adjusted" non-GAAP information).

The Audit Committee shall discuss the guidelines and policies that govern the process by which the Company's exposure to risk is assessed and managed by management.

In connection with the Audit Committee's discussion of the Company's risk assessment and management guidelines, the Audit Committee may discuss or consider the Company's major financial risk exposures and the steps that the Company's management has taken to monitor and control such exposures.

*      *      *

The Audit Committee shall regularly report to and review with the Board any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the performance and independence of the Independent Auditors, the performance of the internal audit function and any other matters that the Audit Committee deems appropriate or is requested to review for the benefit of the Board.

The Audit Committee may discuss with management and the Independent Auditors, and review with the Board, the legal and regulatory requirements applicable to the Company and its subsidiaries, and the Company's compliance with such requirements. After these discussions, the Audit Committee may, if it determines it to be appropriate, make recommendations to the Board with respect to the Company's policies and procedures regarding compliance with applicable laws and regulations.

The Audit Committee may discuss with management legal matters (including pending or threatened litigation) that may have a material effect on the Company's financial statements or its compliance policies and procedures.

36.     Upon information and belief, the Company maintained versions of the Audit Committee Charter during the Relevant Period that imposed the same, or substantially and materially the same or similar, duties on, among others, the Individual Defendants, as those set forth above.

### Duties Pursuant to the Company's Code of Business Conduct and Ethics

37.     The Individual Defendants, as officers and/or directors of Plug Power, were also

bound by the Company's Code of Business Conduct and Ethics (the "Code")[3] which, according to the Code, sets out basic principles to guide the members of the Board of Plug Power, who are required to know and conduct themselves in accordance with the Code, as well as applicable laws and regulations, and to avoid the appearance of improper behavior.

38.     Regarding basic general principles of conduct, the Code states that:

The Code of Conduct sets forth expectations to help guide the actions and behaviors of all employees in our organization, including our subsidiaries and affiliates. Additionally, the Code of Conduct is expected to be upheld by non-employee members of the Board, as well as contractors, vendors, suppliers, consultants and other parties doing business with Plug Power. It is the responsibility of all members of our organization to remain familiar with the content of this policy and to act in a manner compliant with policy expectations.

39.     Regarding the accuracy of the Company's records, the Code states:

Our organization prepares and utilizes a variety of documents and records in the course of doing business. Specific examples include: financial reports, employee timecards, expense reports, corporate books, contracts and a variety of other such documents and records. These documents and records are critical to help guide business decision making while also having financial implications to business operations. Our organization also utilizes both internal and external auditor partners to validate the integrity, reliability and accuracy of Company records As such, Plug Power employees are responsible to ensure the integrity of these records by contributing accurate and timely data. No director, officer or employee may cause Plug Power to enter into a transaction with the intent to document or record it in a deceptive or unlawful manner. In addition, no director, officer or employee may create any false or artificial documentation or book entry for any transaction entered into by Plug Power. Any purposeful falsification of Company documents will be considered as misconduct and will lead to disciplinary action up to and including termination of employment.

40.     Regarding compliance with laws, rules and regulations, the Code states:

Plug Power seeks to conduct its business in compliance with both the letter and the spirit of applicable laws, rules and regulations. No director, officer or employee shall engage in any unlawful activity in conducting Plug Power's business or in performing his or her day-to-day Company duties, nor shall any director, officer or employee instruct others to do so.

---

[3] Available at https://s29.q4cdn.com/600973483/files/doc_downloads/gov-docs/2023/08/plug-code-of-business-conduct-and-ethics-approved-8-2-23.pdf.

41.     Upon information and belief, the Company maintained versions of the Code during the Relevant Period that imposed the same, or substantially and materially the same or similar duties on, among others, the Individual Defendants, as those set forth above.

## Control, Access, and Authority

42.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Plug Power, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Plug Power.

43.     Because of their advisory, executive, managerial, and directorial positions with Plug Power, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of Plug Power.

44.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Plug Power and was at all times acting within the course and scope of such agency.

## Reasonable and Prudent Supervision

45.     To discharge their duties, the officers and directors of Plug Power were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of Plug Power were required to, among other things:

(a) ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(b) conduct the affairs of the Company in an efficient, business-like manner so as

to make it possible to provide the highest quality performance of its business to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) properly and accurately guide shareholders and analysts as to the true financial and business prospects of the Company at any given time, including making accurate statements about the Company's business and financial prospects and internal controls;

(d) remain informed as to how Plug Power conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(e) ensure that Plug Power was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

## BREACHES OF DUTIES

46.     Each Individual Defendant, by virtue of their position as a director and/or officer, owed to Plug Power and its shareholders the fiduciary duties of loyalty and good faith, and the exercise of due care and diligence in the management and administration of the affairs of Plug Power, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Plug Power, the absence of good faith on their part, and a reckless disregard for their duties to Plug Power and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to Plug Power.

47.     The Individual Defendants each breached their duties of loyalty and good faith by allowing the Individual Defendants to cause, or by themselves causing, the Company to make false and/or misleading statements that misled shareholders into believing that disclosures related to the

Company's financial and business prospects were truthful and accurate when made.

48.     In addition, as a result of the Individual Defendants' illegal actions and course of conduct, the Company is now the subject of the Related Securities Action that alleges violations of the federal securities laws. As a result, Plug Power has expended, and will continue to expend, significant sums of money to rectify the Individual Defendants' wrongdoing.

### CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

49.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with, and conspired with, one another in furtherance of their wrongdoing. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

50.     During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to mislead shareholders into believing that the Company's business and financial prospects were better than they actually were. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

51.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (a) disguise the Individual Defendants' violations of law, including breaches of fiduciary duties, unjust enrichment, gross mismanagement, and abuse of control; and (b) disguise and misrepresent the Company's actual business and financial prospects.

52.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently release improper statements. Because the actions described herein occurred under the

authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

53.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commissions of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of their overall contribution to and furtherance of the wrongdoing.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

54.     The Company is a Delaware corporation with principal executive offices in Latham, New York, develops hydrogen fuel cell power systems for use in electric vehicles, stationary power units, and other purposes. Among the Company's products are hydrogen electrolyzers, which use electricity to split water into hydrogen and oxygen so the hydrogen can be stored for later use.

### False and Misleading Statements During the Relevant Period

55.     The Relevant Period begins on August 9, 2022, to coincide with the publication of Plug Power's financial results for the second quarter of 2022. In a letter to shareholders, Defendants touted Plug Power's "Strong Business Outlook" and assured investors that the Company's "[g]rowth outlook remains robust with over $15 billion sales funnel."

56.     Defendants explained that the Company's backlog for electrolyzers was "already ahead of our targeted booking and backlog . . . for the year," highlighting several recent large orders, and represented that the Company "expect[s] to land two pedestal customers in Europe this

year." Additionally, Defendants noted that the Company was "focused on building world class manufacturing and supply chain capabilities," and reaffirmed the Company's 2022 revenue guidance of between $900 million and $925 million, representing growth of approximately 80% year over year.

57.     During the Company's quarterly earnings conference call the same day, Defendants further assured investors that the Company had a reliable supply chain that would support substantial growth. For example, in response to an analyst's question about the Company's "supply chain and . . . preparedness to really respond to how big this could get and how fast you guys want to move," Defendant Marsh explained:[4]

> I would kind of first take a step back and say there's actually 3 ingredients to that supply chain. One actually has to do with design. And when I think about our PEM electrolyzer design, we envision that sooner rather than later, a staff today will actually have about double the power, which actually simplifies, really, our supply chain. So a lot of that happens with can you design the product simpler. And that's continuing to go through our business.

> Probably the more important one is, are we adding the right people. ***And I think the reasons that we don't—not foresee supply issues this year is because the leadership we've put in place***. As you know, I've hired Dave Mindnich [from] Tesla who drove their Reno facility to make sure Tesla vehicles could be delivered. That same sort of mentality about how to develop those strategic relationships with suppliers, we've been working on for a long time.

> And third, look, a lot about this whole integrated supply chain is your own manufacturing capability. And the facility we built in Rochester, the facility we've built in Vista, which now we can occupy, I think, dramatically changes everything. ***So we have sophisticated people who have been driving our supply chain for the past years. We have designs, which we're looking to reduce the number of parts, which help us with cost and supply chain. And third, we have the facilities***.

> And look, our goal is to continue to have that leadership position.

> I don't want to downplay that—and I'm not trying on this call, [to] downplay that we don't fight supply chain issues every day. We do. But that is—the first item I get in the morning is what's going on and do they need me to make a call. So it is

---

[4] All emphasis added unless otherwise indicated.

an everyday effort and it is more complicated. ***But I would say that it's less intense than it was***.

58.     Defendant Marsh further assured investors that the Company was "adding new customers that can help mitigate any slowdown" that was occurring in the global economy, and stated that he had "not seen a reduction" in demand for Plug Power's products and services.

59.     Similarly, Defendant Middleton emphasized that the Company's margins would improve in the second half of 2022 because the Company was "moving quickly to ramp the electrolyzer sales going from kind of scaling the plant [in the] first half to max production in the short term," as well as "the mix of sales and the growth that we're experiencing."

60.     During the conference call, another analyst observed that the Company's inventory had increased dramatically—with the Company reporting nearly $430 million in inventory as of June 30, 2022, up from $269 million in inventory just six months earlier—and asked whether the increase was due to "planned inventory buildup" or "some delay in sales." In response, Middleton assured investors:

> ***It's really anticipation for the second half [of the year]***. I mean, if you look at the sales as we've seen historically, we do about 1/3 in the first half, and we do 2/3 in the second half. It's going to be— we're going to do more sales in the second half than we did almost— well, all of last year. So it's a big push. We're ramping up new facilities and production to support that as well as what we anticipate after in the first part of next year.
>
> ***So that's—I don't see that build continuing on in the second half. I think it will temper, we know it will temper, but it's really driven towards all that growth that we're building for to deliver in the second half***.

61.     The above statements were materially false and misleading, and failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that the Company was unable to effectively manage its supply chain and product manufacturing, resulting in reduced revenues and margins, increased

inventory levels, and several large deals being delayed until at least 2023, among other issues. As a result, Defendants' statements about the Company's business, operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

## **The Truth Begins to Emerge**

62.     On October 14, 2022, Defendants announced that the Company's "prior full year 2022 revenue guidance of $900-925M could be 5%-10% lower for the year" and attributed this revised guidance to "some larger projects potentially being completed in 2023 instead of 2022 due to timing and broader supply chain issues."

63.     On this news, the price of Plug Power common stock declined $1.20 per share, or more than 6%, from a close of $19.23 per share on October 13, 2022, to close at $18.03 per share on October 14, 2022.

64.     While some information about the Company's true condition began to surface, Defendants continued to mislead the market. For example, during a Company symposium on October 19, 2022, Defendants assured investors that this revised guidance still represented substantial growth, with Defendant Middleton explaining that "even at the lower end of what we shared, we would still achieve 60% growth year-over-year."

65.     Defendants also emphasized that the Company was already resolving its supply chain issues, with Defendant Mindnich stating that "we're taking the right steps right now, and we're going to continue to stay ahead of it," and assuring investors that "[o]ur supply chain team and our leader in supply chain is world-class."

66.     The above statements were materially false and misleading, and failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that the Company was unable to effectively manage its

supply chain and product manufacturing, resulting in reduced revenues and margins, increased inventory levels, and several large deals being delayed until at least 2023, among other issues. As a result, Defendants' statements about the Company's business, operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

67.   Additional corrective events surfaced. Specifically, on November 8, 2022, the Company reported its financial results for the third quarter of 2022, revealing that—contrary to Defendants' prior claims of substantial growth in the second half of 2022—the Company's gross margins had decreased 3% sequentially, and 2% on a year-over-year basis, and that Plug Power's inventory levels had further increased to $516 million.

68.   In response to the Company's declining margins and growing inventory levels, the price of Plug Power common stock declined $0.20 per share, or more than 1%, from a close of $14.81 per share on November 8, 2022, to close at $14.61 per share on November 9, 2022.

69.   The partial corrective events did not dissuade Defendants from minimizing the risks facing Plug. During Plug's earnings conference call on November 8, 2022, when an analyst expressed concern about the Company's decreasing margins and increasing inventory, Defendant Middleton again assured investors that the Company's inventory buildup was the result of anticipated sales volume in the fourth quarter of 2022, and stated that "[w]e have the fortunate problem of a big growing backlog," and that "we're focused mainly on delivering and growing that and then you optimize." Defendants also reaffirmed the Company's recently updated 2022 guidance.

70.   The above statements were materially false and misleading, and failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that the Company was unable to effectively manage its

supply chain and product manufacturing, resulting in reduced revenues and margins, increased inventory levels, and several large deals being delayed until at least 2023, among other issues. As a result, Defendants' statements about the Company's business, operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

71.     On January 25, 2023, despite Defendants' continued assurances that Plug Power's revenue would still grow at least 60% year over year and that the Company was addressing its supply chain issues, the Company provided a disappointing business update. Specifically, Defendants reported that the Company now expected 2022 revenue growth of just 45% to 50% year over year—far below both its original projections of approximately 80% growth year over year and the low end of the Company's updated 60% year-over-year growth range that Defendants reaffirmed less than three months prior. In explaining the sizable revenue miss, Defendant Marsh explained that "new products came out a little slower than we hoped," as Plug Power's "[m]anufacturing had a few more issues than we hoped" and "added . . . complexity to supply chain."

72.     On this news, the price of Plug Power common stock declined $0.97 per share, or approximately 6%, from a close of $16.34 per share on January 25, 2023, to close at $15.37 per share on January 26, 2023.

73.     Just a few weeks later, after the market closed on March 1, 2023, Plug Power announced disappointing financial results for the fourth quarter and full year 2022, including annual revenue of $701.4 million—representing only 40% year-over-year growth and missing even the reduced guidance the Company had recently provided.

74.     On this news, the price of Plug Power common stock declined $0.88 per share, or more than 6%, from a close of $14.21 per share on March 1, 2023, to close at $13.33 per share on March 2, 2023.

## DAMAGES TO THE COMPANY

75.     Plug Power has been, and will continue to be, severely damaged and injured by the Defendants' misconduct.  As a direct and proximate result of the Defendants' conduct, Plug Power has been seriously harmed and will continue to be.  Such harm includes, but is not limited to:

> a.     costs incurred in compensation and benefits paid to Defendants that breached their fiduciary duties and violated federal securities laws;
>
> b.     substantial loss of market capital;
>
> c.     costs already incurred and to be incurred defending the Related Securities Action and;
>
> d.     any fines or other liability resulting from the Company's violations of federal law.

76.     In addition, Plug Power's business, goodwill and reputation with its business partners, regulators and shareholders have been gravely impaired.  The credibility and motives of management are now in serious doubt.

77.     The wrongdoing complained of herein has irreparably damaged Plug Power's corporate image and goodwill.  For at least the foreseeable future, Plug Power will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Plug Power's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

78.     Plaintiff brings this action derivatively in the right and for the benefit of Plug Power to redress injuries suffered, and to be suffered, by Plug Power as a direct result of violations of federal securities laws by the Defendants.  Plug Power is named as a Nominal Defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

79.     The Board of Plug Power, at the time this action was commenced, consisted of Defendants McNamee, Willis, Helmer, Marsh, Kenausis, Song, Mahtani and related party non-defendants Joggerst and Bonney, a total of nine (9) individuals.

80.     Plaintiff has not made any demand on the Board to institute this action because a pre-suit demand on the Plug Power Board would be futile, and therefore, excused.  This is because a majority of the Board faces a substantial likelihood of liability as a result of their scheme and false and misleading statements and/or omissions of material adverse facts which render them unable to impartially consider a demand to pursue the wrongdoing alleged herein.

81.     Each of the Director Defendants were responsible for reviewing and approving the Company's public statements made in press releases and financial filings with the SEC throughout the Relevant Period. By authorizing the false and misleading statements and material omissions and described above during the Relevant Period concerning the Company's business and prospects, each of the Director Defendants knowingly faces a substantial likelihood of liability for their participation in the illicit acts alleged herein.

82.     Upon information and belief, in their capacity as members of the Company's Board, the Director Defendants were privy to specific information related to the Company's business and financial prospects, which would reasonably put them on notice that the statements they were

making were in fact false and misleading.

<b>Demand is Futile as to Defendant Marsh Because of His<br>Principal Professional Occupation as the Company's CEO</b>

83.    Defendant Marsh is the Company's CEO and has served in his position as CEO since April 2008. Defendant Marsh is also a member of the Board. In his role as CEO of the Company for the fiscal year 2022, Defendant Marsh received $766,555 in total compensation. The Company does not claim that Defendant Marsh is an independent director and because his primary source of income and primary employment is his employment as CEO of Plug Power and his professional reputation is inextricably bound to his role at Plug Power. Defendant Marsh is incapable of acting independently and demand is futile upon him.

<b><u>Demand is Futile as to the Members of the Audit Committee</u></b>

84.    Demand is futile as to Defendants Willis, Helmer, Kenausis, and Mahtani (the "Audit Committee Defendants") as members of the Audit Committee during the Relevant Period for their knowing failure to fulfill their responsibilities.

85.    The Board adopted an Audit Committee Charter, setting forth the responsibilities of the Audit Committee.  The duties and purpose of the Audit Committee are set forth *supra*.

86.    Upon information and belief, in their capacity as members of the Audit Committee, the Audit Committee Defendants were privy to specific information related to the Company's business, operations, and prospects, which would reasonably put them on notice that the statements set forth above in the Company's public filings were materially false and misleading when made.

87.    The Company's public filings concerning the Company's business and prospects during the Relevant Period contained materially misleading information and/or omitted material information. In their capacity as members of the Audit Committee, the Audit Committee Defendants were charged with ensuring that these reports did not contain such materially

23

misleading information.  By allowing documents to be filled with misleading information, the Audit Committee Defendants face a sufficiently significant likelihood of liability so as to render them interested.  Accordingly, the Audit Committee Defendants cannot adequately independently consider a demand.

## Demand is Futile as to the Director Defendants

88.     Plaintiff has not made any demand on the Board to institute this action because a pre-suit demand on the Company's Board would be futile, and therefore, excused.  This is because a majority of the Board faces a substantial likelihood of liability as a result of their knowing toleration of the above described false and misleading statements and omissions of material adverse facts, which render them unable to impartially consider a demand to pursue the wrongdoing alleged herein.

89.     Upon information and belief, in their capacity as members of the Company's Board, the Director Defendants were privy to specific information related to the Company's business and financial prospects, which would reasonably put them on notice that the statements they were making were in fact false and misleading.

90.     Each of the Director Defendants were responsible for reviewing and approving the Company's public statements made in press releases and financial filings with the SEC throughout the Relevant Period.  By authorizing the false and misleading statements and material omissions and described above during the Relevant Period concerning the Company's business and prospects, each of the Director Defendants knowingly faces a substantial likelihood of liability for their participation in the illicit acts alleged herein.

91.     Accordingly, the Director Defendants face a sufficiently substantial likelihood of liability such as to create a reasonable doubt as to their impartiality to consider a demand to sue

themselves in the present action.

## COUNT I

**Against the Securities Action Defendants for**
**Contribution Under Section 10(b) of the Exchange Act,**
**<u>Rule 10b-5 Promulgated Thereunder, and/or Section 20(a) of the Exchange Act</u>**

92.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

93.     As a result of the conduct and events alleged above, Plug Power has been named as a defendant in the Related Securities Action brought on behalf of Plug Power shareholders in which it is a joint tortfeasor in claims brought under Section 10(b) of the Securities and Exchange Act and Rule 10(b)-5 promulgated thereunder.

94.     Federal law provides Plug Power with a cause of action against other alleged joint tortfeasors under Rule 10b-5.  In particular, under the Supreme Court's decision in *Musick, Peeler & Garrett v. Employers Insurance of Wausau*, 508 U. S. 286, Plug Power has a federal law right of contribution against joint tortfeasors under Rule 10b-5.  Section 21D(f) of the Securities and Exchange Act further sets forth specific provisions entitling Plug Power to contribution against all joint tortfeasors under Rule 10b-5, regardless of whether they have been named as defendants in the currently pending Related Securities Action, and sets forth specific rules regarding the determination of claims for such contribution.

95.     Accordingly, Plaintiff, on behalf of Plug Power, hereby claims contribution against the Securities Action Defendants, each of whom has been named in the currently pending Related Securities Action as a joint tortfeasor with Plug Power under Rule 10b-5, or if joined in such actions, would be liable for the same damages as Plug Power.

96.     Plug Power claims no right to indemnification under the federal securities laws

from them in this count, but rather only claims contribution.

**Allegations Regarding the Securities Action Defendants**

97.     Throughout the Relevant Period, the Securities Action Defendants caused the Company to issue false and misleading statements and/or omit material information in public statements and/or Company filings concerning the Company's business and financial prospects. These statements were materially misleading to persons who purchased Plug Power securities during the Relevant Period.

98.     The plaintiffs in the Related Securities Action allege that they relied, directly or indirectly, upon these false statements and misleadingly omissive disclosures in purchasing Plug Power securities, and, as a result, suffered damages because value of their investments was distorted by the false and materially omissive statements, and they purchased such securities at such distorted prices.

99.     The damages suffered by said investors were caused by reason of the fact that (i) they were induced to purchase said securities by the false and misleading statements alleged herein, and (ii) the reveal of the true nature of the Company's business and prospects resulted in the decrease in price of its securities, causing the value of shareholders investments to drop.

100.     The plaintiffs in the Related Securities Action were unaware of the false and misleading nature of said statements and omissive disclosures.

101.     When the Securities Action Defendants signed off on or made the false statements and omissive disclosures detailed herein, they had actual knowledge that they were false and misleading.  As alleged in detail herein, due to their positions as employees and/or directors of Plug Power, the Securities Action Defendants were privy to information regarding the Company's business and financial prospects and would have been aware that the statements made were in fact

false and misleading when made.

102.     Accordingly, the Securities Action Defendants are liable for damages under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and, if Plug Power were to be held liable in the Related Securities Action, the Securities Action Defendants would be liable to it for contribution.  Plaintiffs hereby derivatively claim such right of contribution on behalf of Plug Power.

#### Allegations Regarding the Securities Action Defendants as Control Persons

103.     In acting as alleged above, the Securities Action Defendants were acting as authorized agents of Plug Power in their roles as directors and/or employees.  Because of their positions of control and authority as senior officers and/or directors, the Securities Action Defendants were able to, and did, control the contents of the various reports, press releases and public filings disseminated by the Company throughout the Relevant Period, as alleged herein.

104.     The Securities Action Defendants were "controlling persons" of Plug Power within the meaning of Section 20(a) of the Exchange Act, and, accordingly, the Securities Action Defendants could be held liable to the plaintiffs in the Related Securities Action.  Were the Company to be held liable in said Related Securities Action, the Securities Action Defendants would be liable to it for contribution.

105.     Plaintiff hereby derivatively claims such right of contribution on behalf of Plug Power.

### COUNT II

#### Against the Individual Defendants for Breaches of Fiduciary Duty

106.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    The Individual Defendants owed and owe Plug Power fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Plug Power the highest obligation of good faith, loyalty, and due care.

108.    The Individual Defendants have violated and breached their fiduciary duties of good faith, loyalty, and due care by causing or allowing the Company to disseminate to Plug Power shareholders materially misleading and inaccurate information through the Company's SEC filings throughout the Relevant Period.  These actions could not have been a good faith exercise of prudent business judgment.

109.    During the course of the discharge of their duties, the Individual Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet the Individual Defendants caused Plug Power to engage in the conduct complained of herein which they knew had an unreasonable risk of damage to the Company, thus breaching their duties owed to Plug Power and its shareholders.  As a result, the Individual Defendants grossly mismanaged the Company.

110.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

111.    Plaintiff, on behalf of Plug Power, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Unjust Enrichment

112.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

113.    By his wrongful acts and omissions, the Individual Defendants were unjustly

enriched at the expense of and to the detriment of Plug Power.

114.     The Individual Defendants were unjustly enriched as a result of the compensation they received while breaching their fiduciary duties owed to Plug Power.

115.     Plaintiff, as a shareholder and representative of Plug Power, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants from their wrongful conduct and breaches of fiduciary duty.

116.     Plaintiff, on behalf of Plug Power, has no adequate remedy at law.

## COUNT IV

### Against the Individual Defendants for Waste of Corporate Assets

117.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

118.     The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue. It resulted in continuous, connected, and ongoing harm to the Company.

119.     As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, among other things: (a) paying excessive compensation and bonuses to certain executive officers; (b) awarding self-interested stock options to certain officers and directors; and (c) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Related Securities Action.

120.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

121.     Plaintiff, on behalf of the Company, has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in the Company's favor against all Defendants as follows:

A.    Declaring that Plaintiff may maintain this action on behalf of Plug Power and that Plaintiff is an adequate representative of the Company;

B.    Determining and awarding to Plug Power the damages sustained by it as a result of the violations set forth above from each of the Defendants, jointly and severally, together with interest thereon;

C.    Directing Plug Power and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Plug Power and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's By-Laws or Articles of Incorporation; and the following actions as may be necessary to ensure proper Corporate Governance Policies:

(1) a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board; and

(2) a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

D.    Determining and awarding to Plug Power exemplary damages in an amount necessary to punish Defendants and to make an example of Defendants to the community according to proof at trial;

     E.     Awarding Plug Power restitution from Defendants, and each of them;

     F.     Awarding Plug Power Contribution from the Securities Action Defendants, and each of them;

     G.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

     H.     Granting such other and further equitable relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 13, 2023

**LONG LAW, LLC**

*/s/ Brian D. Long*
_____
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: bdlong@longlawde.com

**OF COUNSEL:**

Joshua M. Lifshitz
**LIFSHITZ LAW PLLC**
1190 Broadway
Hewlett, NY 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376
Email: jlifshitz@lifshitzlaw.com

*Attorney for Plaintiff*